UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFTON MASSALINE,

        Petitioner,

v.                                                    Case No. 3:20-cv-824-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Clifton Massaline, an inmate of the Florida penal system, initiated this action on July 22, 2020, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) with a corresponding memorandum of law (Supplemental Memorandum; Doc. 2).[1] Massaline challenges a 2009 state court (Duval County, Florida) judgment of conviction for robbery. See Petition at 1; Doc. 2. Respondents have submitted a memorandum opposing the Petition. See Response to Petition for Writ of Habeas Corpus (Response; Doc. 7). They also submitted exhibits. See Response

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Ex. 1−19. Massaline filed a Reply. <u>See</u> Reply to Respondents Response to Petition for Writ of Habeas Corpus (Reply; Doc. 9). This action is ripe for review.

## II. Relevant Procedural History

On September 15, 2008, the state charged Massaline by Information with one count of robbery. Response Ex. 1 at 9. Massaline proceeded to trial, and on February 18, 2009, a jury found him guilty as charged in the Information. <u>Id.</u> at 16. On March 26, 2009, the trial court adjudicated Massaline as a habitual felony offender and sentenced him to a thirty-year term of imprisonment with a fifteen-year minimum mandatory as a prison releasee reoffender. <u>Id.</u> at 13−14.

On direct appeal, with the assistance of appellate counsel, Massaline filed an initial brief. Response Ex. 7 at 3−22. He argued the trial court violated his constitutional rights when it, rather than a jury, made the habitual felony offender and prison releasee reoffender findings that authorized the imposition of a greater sentence. <u>Id.</u> The state filed an answer brief. Response Ex. 8 at 3−14. The First District Court of Appeal (First DCA) per curiam affirmed Massaline's conviction and sentence without a written opinion on April 9, 2010. Response Ex. 9 at 4. The court issued the mandate on April 27, 2010. <u>Id.</u> at 3.

Massaline filed a Petition for Writ of Habeas Corpus with the First DCA on November 9, 2010, in which he raised one claim of ineffective assistance of

appellate counsel. Response Ex. 11 at 3–14. The First DCA denied the Petition with a written opinion on January 10, 2011. Response Ex. 12 at 3.

On April 4, 2011, Massaline filed a motion for postconviction relief in state court pursuant to Florida Rule of Criminal Procedure 3.850. Response Ex. 16 at 7–36. In his Rule 3.850 motion, Massaline raised seven grounds of ineffective assistance of counsel. Id. Massaline filed a supplemental motion to his initial Rule 3.850 motion on May 20, 2011, raising two more grounds of ineffective assistance of counsel. Id. at 54–59. The trial court entered an order dismissing Massaline's supplemental motion because of a facial insufficiency and granted leave to amend on July 21, 2015. Id. at 66–68. Massaline filed a timely amendment on August 4, 2015. Id. at 69–74.

The trial court then dismissed Massaline's Rule 3.850 motion and amended supplemental motion based on legal insufficiencies. Id. at 86–89. Massaline filed a timely amended motion asserting six grounds for relief. Id. at 90–109. Specifically, he alleged that trial counsel failed to: file a motion in limine (ground one); object to hearsay testimony (ground two); suppress and object to admission of out-of-court testimony from a suggestive show-up procedure (ground three); suppress evidence of a brush (ground five); and object to impermissible references by the prosecution (ground six). Id. The trial court summarily denied relief on all grounds. Id. at 123–42. On March 11, 2020, the First DCA per curiam affirmed the trial court's denial without a

written opinion. Response Ex. 18 at 3. The mandate issued on April 8, 2020. Id. at 5.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318−19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Massaline's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

4

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be
rebutted by showing that the higher state court's adjudication most likely
relied on different grounds than the lower state court's reasoned decision, such
as persuasive alternative grounds that were briefed or argued to the higher
court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars
relitigation of the claim unless the state court's decision (1) "was contrary to,
or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States;" or (2) "was based on
an unreasonable determination of the facts in light of the evidence presented
in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97−98.
The Eleventh Circuit describes the limited scope of federal review pursuant to
§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in <u>Williams v. Taylor</u>,
> 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000),
> § 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable application"
> clause. The "contrary to" clause allows for relief only
> "if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

7

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102−03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range"

8

of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

Massaline raises one ground in his Petition. He contends that trial counsel was ineffective for failing to move to suppress the admission of identification evidence that resulted from an impermissibly suggestive and unnecessary show-up identification procedure. Supplemental Memorandum at 2. According to Massaline, the police identification procedure was unduly suggestive and intentionally arranged to guarantee that a witness would identify him as the perpetrator. Id. at 5. In support of this contention, Massaline maintains law enforcement presented him to the witness handcuffed and "flanked by two officers." Id. Further, Massaline alleges the state's identification witness was not present when the crime took place giving rise to a substantial likelihood of misidentification. Id. at 6–7. Massaline also argues no reasonable attorney would have proceeded to trial before moving to suppress this identification evidence because it lacked reliability. Id. at 7.

Massaline raised this claim in his Rule 3.850 Motion. Response Ex. 16 at 96–99. The trial court summarily denied the claim, finding in relevant part:

> Defendant has not alleged facts that demonstrate that the out-of-court identification procedure resulted in a substantial likelihood of irreparable misidentification. In this case, Defendant simply argues that the witness was able to view the individual running through the Home Depot parking lot from a distance of 15 to 20 feet away and could not see the individual's facial features. However, as indicated in Ground One, these facts would go to the weight of the evidence and not to its admissibility. Considering the totality of the circumstances, it is unlikely that the show-up

11

procedure resulted in a substantial likelihood of irreparable misidentification. Mr. Baity was able to view the individual in a lit parking lot and accurately described the clothing worn by the man and the items that he was carrying. Mr. Baity also indicated that he turned to look at the individual, because he heard him running and indicated that his actions made him suspicious. His description of the perpetrator's clothing was identical to the description that the victim gave and also to the individual that was eventually detained by law enforcement. The record does not reflect that Mr. Baity was uncertain about his identification, although it was based on the individual's clothing, size and build rather than facial features. Finally, the show-up procedure was conducted shortly after police had apprehended Defendant and on the same evening that Mr. Baity had viewed the individual running through the parking lot. Defendant has not alleged that any conduct on the part of law enforcement aggravated the suggestiveness of the procedure. Rather, he simply complains that the witness saw him from a short distance and could not identify him based on his facial features. Nonetheless, based on the totality of the circumstances, this Court finds that Defendant has failed to demonstrate that the out-of-court identification testimony was improperly admitted. As such, Defendant cannot demonstrate that counsel was ineffective for failing to move to suppress the identification. Accordingly, Ground Three is due to be denied.

Response Ex. 16 at 133−34. The First DCA per curiam affirmed the trial court's

summary denial without a written opinion. Response Ex. 18 at 3. To the extent

that the First DCA affirmed the trial court's denial on the merits, the Court

will address the claim in accordance with the deferential standard for federal

court review of state court adjudications. After a review of the record and the

applicable law, the Court concludes that the state court's adjudication of this

claim was not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As a result, Massaline is not entitled to relief on the basis of this claim.

Even if the state court's adjudication of this claim is not entitled to deference, Massaline's claim lacks merit. The Eleventh Circuit Court of Appeals has instructed that, "[a]lthough show-ups are widely condemned, immediate confrontations allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons." Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987) (internal citation omitted). Nevertheless, the Supreme Court has recognized "a due process check on the admission of eyewitness identification." Perry v. New Hampshire, 565 U.S. 228, 232 (2012). An eyewitness identification violates due process and is subject to exclusion, if the "identification procedure used by the police [is] unnecessarily suggestive and create[s] a substantial risk of misidentification." Johnson, 817 F.2d at 729 (citing Neil v. Biggers, 409 U.S. 188, 198−99 (1972)).

To determine whether an identification violates due process, a court undertakes a two-part analysis. "First, we must determine whether the original identification procedure was unduly suggestive . . . . If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was

nonetheless reliable." Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988) (citing Biggers, 409 U.S. at 199). Even if the procedure used by law enforcement is both suggestive and unnecessary, suppression is not an "inevitable consequence." Perry, 565 U.S. at 239.

In Biggers, the Supreme Court identified five factors to consider when determining whether a witness identification was reliable. Those factors are: the witness's opportunity to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the description of the suspect, the level of certainty of the identification, and the length of time between the crime and the identification. See Biggers, 409 U.S. at 199. Notably, the Supreme Court has concluded that, absent "a substantial likelihood of irreparable misidentification," the identification of a suspect by a witness is evidence for the jury to weigh. Manson v. Brathwaite, 432 U.S. 98, 116 (1977).

At issue here is a show-up procedure that occurred shortly after the robbery. Evidence adduced at trial shows that on August 24, 2008, a male robbed a Hardee's restaurant in Jacksonville, Florida. Around 11 p.m. that evening, three store employees were working the closing shift: Bridget Gilmore, shift manager; Santini Macon, cook; and Shirley Mosley, crew member. Response Ex. 4 at 30–31; 58–59. A man walked into the restaurant, came up to the counter, and began to choke Gilmore by her shirt. Id. at 31, 62. Gilmore testified the perpetrator was dark skinned, slender but with a

muscular build, about six feet tall, wearing a black t-shirt, dark shorts, and black-and-white tennis shoes. Id. 31−32. Mosley testified the perpetrator was a black male, about six feet tall, wearing a black shirt, black shorts, and black shoes with white bottoms. Id. at 60−61.

Gilmore opened the safe and cash registers and put their contents including rolled coins into a Hardee's bag; she also gave the man a money bag that was already in the safe. Id. at 33−34. Gilmore testified that after collecting the money, the perpetrator exited the store, which shared a parking lot with a Home Depot and Applebee's. Id. at 52. During the robbery, Macon was able to slip into the office and call 911. Id. at 39, 49, 62. Once the perpetrator left the Hardee's, Gilmore called 911 and gave the last known direction of where he had fled. Id. at 50.

At the nearby Home Depot, Richard Baity, an employee of the Home Depot, was checking locks on trailers in the parking lot after the store had closed. Id. at 71, 73. Around 11 p.m., Baity heard an individual running through the lit, mostly empty, parking lot of the Home Depot. Id. at 74, 77−78, 85. It rained earlier that day and there were puddles in the parking lot. Id. at 116. Baity described the individual as an African American male, about 6 feet 2 inches tall, of medium build. Id. at 74. The man wore a dark shirt with a white shirt underneath, dark shorts, and black sneakers with white soles. Id. at 75. The man tripped over a rock on the ground and Baity witnessed cash

and rolled coins come out of the bag. Id. at 76. According to Baity, the perpetrator continued to run, but then turned back to collect the dropped money from the ground. Id. at 77. The perpetrator started to run off again but turned back a second time to retrieve more money, only running away for good when he heard police sirens. Id. at 77. When the police arrived, Baity alerted them to the dropped money, Hardee's bag, and a hairbrush on the ground. Id. at 79–82. Baity also told police the direction in which the perpetrator ran. Id. at 78.

Officer William Katsacos responded to the robbery call and pursued the perpetrator in his patrol vehicle. Id. at 92, 94. Officer Katsacos encountered Massaline who was the only individual in the general area and matched the description of the perpetrator from the 911 call. Id. at 95–100, 113–14. Officer Katascos testified Massaline was over six feet tall, sweaty, breathing heavily, and had soaking wet shoes. Id. at 98. When Officer Katsacos searched Massaline, he found a large amount of crumpled up money in his pocket. Id. at 98. Massaline was wearing a white undershirt, black shorts, and black shoes with a white sole on the bottom, while carrying a black shirt. Id.

Soon after, police took Baity to a nearby parking lot where they had detained Massaline. Id. at 82. Massaline was handcuffed with an officer next to him. Id. at 87, 111. Baity identified Massaline as the person he saw running through the parking lot based on his size, build, and clothing, but could not

16

identify any facial features. Id. at 82, 87. In the courtroom, Baity identified the shoes taken from Massaline as similar to those he saw on the perpetrator. Id. at 83–84.

Initially, the Court finds the show-up procedure executed by law enforcement on the evening of August 24, 2008, was not unduly suggestive as Massaline contends. A defendant being handcuffed or accompanied by law enforcement during a show-up does not automatically equate to an unduly suggestive procedure. See United States v. Winfrey, 403 F. App'x 432, 436 (11th Cir. 2010) (concluding show-up was not unduly suggestive when officers escorted defendant out of patrol car so the victim could see him);[2] United States v. Walker, 201 F. App'x 737, 741 (11th Cir. 2006) (holding show-up was not unduly suggestive where the defendant was presented for identification singly, in handcuffs, and surrounded by police officers).

Even if the Court assumes the show-up identification procedure used here was suggestive, it was nonetheless reliable under the totality of the circumstances. Before turning to the Biggers factors, the Court addresses Massaline's argument that Baity was not a "witness" to the crime.

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Unfortunately for Massaline, his understanding of what or who may constitute a witness is mistaken. Law enforcement is not restricted to using a show-up procedure only for victims. A person who views a crime itself or views the immediate aftermath of a crime—as in this case by watching Massaline flee from the scene—is a witness who can appropriately provide an identification of the perpetrator. See generally Johnson, 817 F.2d at 729 (Show-up identification with witness who viewed defendants before committing crime); Cassidy v. McNeil, 621 F. Supp. 2d 1222, 1239 (M.D. Fla. 2008) (Show-up identification with witness who viewed defendant fleeing from the robbery scene in a parking lot). Indeed, show-up procedures can be used with both victims and witnesses alike.

The mere fact that Baity, the witness at issue here, was not present inside the Hardee's when the crime occurred does not taint his identification with an inherent likelihood of misidentification. Instead, Baity's view of the perpetrator fleeing the scene with the money and Hardee's bag makes him a witness to the ongoing crime or its aftermath and an appropriate witness for identification purposes. The Court finds Massaline's contention that Baity is somehow ineligible to give an identification through a show-up procedure to be unavailing.

With that said, considering the totality of the circumstances, Massaline has failed to make a showing that the identification was unreliable. Applying

18

the five <u>Biggers</u> factors: (1) Baity viewed the perpetrator flee the crime scene in a lit parking lot; (2) Baity was able to describe the clothing and build of the perpetrator and his actions in tripping and dropping some of the money, which shows his degree of attention; (3) Baity's description of the perpetrator's clothing was identical to the description that the victims gave and matched the clothing Massaline wore when he was detained by law enforcement and Baity described the perpetrator as having dropped cash and rolled coins which is consistent with what Gilmore stated she put in the Hardee's bag; (4) nothing in the record suggests that Baity was uncertain about this identification; and (5) Baity made his identification within a short time of the incident while his memory was still fresh. Under these circumstances, Baity's identification was not unreliable even if the Court assumes it was impermissibly suggestive.

On this record, trial counsel was not deficient for failing to put forth the meritless argument Massaline raises here as, for the reasons explained above, there is not a substantial likelihood of irreparable misidentification. <u>See</u> <u>Freeman v. Att'y Gen.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). The identification of Baity was evidence properly put before the jury to weigh. <u>See</u> <u>Biggers</u>, 409 U.S. at 199; <u>Manson</u>, 432 at 116.

Even if trial counsel was deficient, Massaline has not shown any resulting prejudice. Together with the evidence detailed above, law

enforcement collected evidence from the Home Depot parking lot, including money, a hairbrush, and a brown Hardee's bag. Response Ex. 4 at 123. Despite rain earlier that day, the hairbrush was not wet. Id. at 124. When comparing known samples of DNA from Massaline to the hairbrush found with the money stolen from the Hardee's, the Florida Department of Law Enforcement laboratory found a match. Id. at 176, 179. Considering the evidence presented at trial, Massaline has not shown that a reasonable probability exists that the outcome would have been different if trial counsel had successfully moved to suppress the show-up procedure used by law enforcement. Because he has shown neither deficient performance nor resulting prejudice, the ineffectiveness claim is baseless. Relief on this claim is due to be denied.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Massaline seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Massaline "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the

issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335−36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Massaline appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate

of appealability is not warranted, the Clerk shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed

in this case. Such termination shall serve as a denial of the motion.

    4.    The Clerk of the Court is directed to close this case and terminate

any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of

September, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

c:    Clifton Massaline # J20694
      Counsel of record